## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| GUI HUA DING,<br><br>*Plaintiff,*<br><br>v.<br><br>BAUMGART RESTAURANT, INC.,<br><br>BAUMGART'S NEXT DOOR, INC.,<br><br>GOU-FU WANG,<br><br>STEVE WU,<br><br>MARSHA WU,<br><br>THEAN CHOO CHONG,<br><br>*Defendants.* | Civil Action No. 2:18-cv-10358<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on a motion for conditional collective action certification pursuant to Section 216(b) of the Fair Labor Standards Act ("FLSA") filed by named Plaintiff Gui Hua Ding. Plaintiff is a former deliveryman at Defendant Baumgart Next Door, Inc., d/b/a Baumgart's Café.[1] Plaintiff requests that the Court conditionally certify and provide notice

---

[1] The relationship among the various Defendants is slightly unclear from the Complaint. Based on explanations provided in the opposition briefs, it appears that Defendants Gou-Fu Wang, Steve Wu, and Marsha Wu owned and operated a restaurant known as Baumgart's Café through an entity called Baumgart Restaurant, Inc. At some point after Plaintiff began working there, possibly in September of 2017, the restaurant was sold to Thean Choo Chong, who subsequently operated Baumgart's Café through an entity called Baumgart's Next Door, Inc. Plaintiff alleges that

to a class of all current and former non-exempt and non-managerial employees who were allegedly

not paid at least the minimum wage for all hours worked and compensated for overtime work as

required by the FLSA. D.E. 23. Defendants Baumgart Next Door, Inc. and Thean Choo Chong

(collectively, "Next Door") filed a brief in opposition to Plaintiffs' motion (D.E. 36) and

Defendants Baumgart Restaurant, Inc., Gou-Fu Wang, Steve Wu, and Marsha Wu (collectively,

"Restaurant Group") did the same (D.E. 37), to which Plaintiff replied (D.E. 40).[2] The Court

reviewed all submissions made in support and in opposition to the motion, and considered the

motion without oral argument pursuant to L. Civ. R. 78.1(b). For the reasons stated below,

Plaintiffs' motion is **DENIED**.

## I.    FACTS AND PROCEDURAL HISTORY[3]

Named Plaintiff Ding filed his Complaint on June 10th, 2018, alleging that Defendants

Next Door and Restaurant Group failed to pay him minimum wage and compensate him for

overtime work as required by FLSA. He further claims that both groups of Defendants had a

policy and practice of underpaying other non-exempt and non-managerial employees.

Plaintiff was hired by Defendant Restaurant Group to work as a deliveryman on or about

October 1, 2015. Compl. ¶ 35, D.E. 1. From then until September 30, 2017, Plaintiff worked ten

and a half hours per day, five days a week. *Id.* ¶ 38. He also worked an additional five hours a

day, one day per week. *Id.* In addition to these regular duties, Plaintiff was on "driver duty" three

to four days a week, when he was required to shuttle other employees to and from a location in

---

working conditions differed for him under the different ownership regimes, but that both violated
FLSA.

[2]  When appropriate, Next Door and the Restaurant Group are referred to as "Defendants".

[3]  The facts are drawn from the Complaint (D.E. 1) and an affidavit from Plaintiff that was
submitted in conjunction with the current motion (D.E. 24-5). This affidavit will be referred to as
the "Ding Aff.". Plaintiff's memorandum in support (D.E. 25) will be referred to as "Plf. Br.".

Queens, New York to the restaurant in Englewood, New Jersey. *Id.* ¶ 40. Driver duty constituted an additional five hours per week during weeks when he was on duty three days a week and an additional six hours and forty minutes when he was on duty four days a week. *Id.* ¶ 43. In all, Plaintiff worked an average of 63.33 hours per week between October 1, 2015 and September 30, 2017. *Id.* ¶ 44. For these labors, Plaintiff was paid $300 per week and an additional $15 each day that he was on driver duty. *Id.* ¶ 46.

From about October 1, 2017 to April 29, 2018, Plaintiff was employed at the same restaurant by Defendant Next Door, also as a deliveryman. *Id.* ¶ 37. During this period, he worked ten and a half hours per day, five days a week. *Id.* ¶ 48. He also continued with driver duty on the same schedule. *Id.* ¶ 52. Therefore, Plaintiff worked an average of 58.33 hours per week from October 1, 2017 to April 29, 2018. *Id.* ¶ 53. Plaintiff was paid $325 per week and an additional $15 each day he was on driver duty. *Id.* ¶ 55. At no time during his employment by either Defendant Restaurant Group or Defendant Next Door was Plaintiff given any time for break, nor was he paid at one and a half times the minimum wage for hours worked above 40 hours per week. *Id.* ¶¶ 57, 58.

Plaintiff alleges that Defendants had a policy of refusing to pay the statutory minimum wage as well as overtime to other non-exempt and non-managerial employees. *Id.* ¶ 67. This policy violates FLSA's requirement for employers to provide one and a half times the wage rate for every hour worked in excess of 40 hours per week. *Id.* ¶ 71. Plaintiff seeks several forms of relief, including compensation for unpaid minimum and overtime wages.[4] *Id.* ¶ 81.

---

[4] Plaintiff is also seeking reimbursement for out-of-pocket costs that he and other deliverymen incurred in the course of their delivery duties. Compl. ¶ 84. But this relief does not appear to apply the larger class, in which Plaintiff seeks to include all non-managerial employees, including those without delivery duties.

In support of the claim that other putative class members, *i.e.*, all non-exempt, non-managerial employees in the three-year period prior to the filing of the claim, are "similarly situated," Plaintiff has submitted an affidavit regarding the hours and pay rates of other employees. Discovery in this case is still in the early stages. None of the evidence from discovery has been presented in support of the instant motion. Therefore, this Court must rely primarily on Plaintiff's affidavit.[5]

Plaintiff explains in his affidavit that he "know[s] that it is Defendants' policy not to pay any employee at time and a half rate for all of their overtime hours." Ding Aff. ¶ 33. He knows this "because [he has] talked with other employees, who has [sic] the same or similar working schedule as [he does], and was told that they were also not paid for the total amount of time they have worked, nor compensated for all of their overtime hours worked." *Id.* Plaintiff mentions that he is familiar with the hours and pay rate of several other deliverymen. Two, Kai Yu and Li, worked for Defendants[6] for approximately the same period of time as Plaintiff. *Id.* ¶¶ 37, 44. While neither were drivers, both worked around 57.5 hours per week and were paid at a weekly rate of $325. *Id.* ¶¶ 38, 40, 45, 47. Plaintiff knows their hours and pay rates because he worked similar schedules to them and had heard them mention how much they had been paid. *Id.* ¶¶ 39, 41, 46, 48.

Plaintiff also claims knowledge of the hours and pay rates of employees other than deliverymen. Their job titles were receptionist, waiter, "general manager," and chef. *Id.* ¶¶ 49, 54, 59, 64, 69, 74, 79. Each worked for Defendants (or one of the Defendants) at some point

---

[5] Plaintiff also includes a "related case" complaint filed in this Court in 2015. D.E. 24-2. This complaint, for reasons discussed below, is of little value to the present analysis.

[6] Plaintiff does not distinguish between Defendant Restaurant Group and Defendant Next Door when describing the pay of co-workers.

during Plaintiff's tenure of employment. *Id.* ¶¶ 51, 56, 61, 66, 71, 76. Plaintiff worked alongside each and was therefore familiar with their respective schedules and that each averaged more than 40 hours of work per week. *Id.* ¶¶ 52, 53, 57, 58, 62, 63, 67, 68, 72, 73, 77, 78, 82, 83. While Plaintiff states that he knows it is "Defendants' common policy to not pay its employees with overtime pay or maintain accurate payroll records," he does not explain how he knows that the non-deliverymen employees were underpaid, other than that he "sincerely believe[s] . . . [they were] also not paid minimum wages or overtime wages because all of us were paid the same way and were given similar working schedules and pay rate." *Id.* ¶¶ 84, 85. In addition to these individuals, Plaintiff states that, upon information and belief, there are more than 40 members of the proposed class. Compl. ¶ 25.

## II.    LEGAL STANDARD

The FLSA requires employers to pay overtime compensation for an employee's work that is in excess of forty hours per week. 29 U.S.C. § 207(a). Employees who work in a *bona fide* executive capacity, however, are exempt from FLSA overtime requirements. 29 U.S.C. § 213(a)(1). To qualify under the executive exemption, an employee must satisfy the criteria set forth in 29 C.F.R. § 541.100, which requires that (1) the employee receive compensation on a salary basis, (2) her primary duty is management of a recognized department, (3) she customarily and regularly directs the work of two or more employees, and (4) she has authority to hire or fire employees. 29 C.F.R. § 541.100. An employee's primary duty is "the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a).[7] Accordingly, if an

---

[7] In addition, "concurrent performance of exempt and nonexempt work does not disqualify an employee from the executive exemption if the requirements of § 541.100 are otherwise met." 29 C.F.R. § 541.106(a). Whether the employee performs concurrent duties "is determined on a case-by-case basis." *Id.*

employee falls under the *bona fide* executive exemption, she is not entitled to overtime pay pursuant to the FLSA. *See Laval v. Jersey City Hous. Auth.*, No. 10-4416, 2011 WL 1792795, at *6 (D.N.J. May 10, 2011) (dismissing FLSA claim because plaintiff's job responsibilities, which included supervising and evaluating staff members, fell into the executive exemption).

The FLSA provides employees with a private right of action to bring a collective suit against an employer to recover unpaid wages. Pursuant to 29 U.S.C. § 216(b), an employee and additional "similarly situated" employees can file a collective action suit against an employer to recover unpaid overtime compensation required by Section 207.[8] The term "similarly situated," however, is not defined by the FLSA or the supporting regulations. *See Ruffin v. Avis Budget Car Rental, LLC*, No. 11-1069, 2014 WL 294675, at *2 (D.N.J. Jan. 27, 2014). As a result, courts have interpreted similarly situated to mean that a plaintiff must "produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Symczyk v. Genesis HealthCare Corp.* *(Symczyk I)*, 656 F.3d 189, 193 (3d Cir. 2011), *rev'd on other grounds by Genesis HealthCare Corp. v. Symczyk (Symczyk II)*, 133 S. Ct. 1523 (2013). Further, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such

---

[8] While the group of similarly situated employees is frequently called a class, there are a number of key differences between a Rule 23 class action and an FLSA collective action. First, FLSA collective action plaintiffs must "opt-in" to the class, rather than "opt-out," which occurs in a Rule 23(b)(3) class action. *Bobryk v. Durand Glass Mfg., Inc.*, 50 F. Supp. 3d 637, 642 (D.N.J. 2014). In addition, in a Rule 23 class, plaintiffs must establish that "the putative class meets the threshold requirements of Rule 23(a) as well as one of the three Rule 23(b) categories." *Id.* In contrast, in an FLSA collective action, plaintiffs must only establish that they are "similarly situated." *Id.* at 641-42. Last, in a Rule 23 class action, the statute of limitations for the entire class is tolled when a complaint is filed. For each individual FLSA collective action member, however, the statute of limitations is only tolled when that employee files written consent to opt into the class. *Adami v. Cardo Windows, Inc.*, No. 12-2804, 2015 WL 1471844, at *5 (D.N.J. Mar. 31, 2015).

consent is filed in the court in which such action is brought." § 216(b). Thus, employees must actively "opt-in" to an FLSA collective action suit.[9]

The Third Circuit follows a two-step process for deciding whether a case may proceed as an FLSA collective action. *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013). In the first step, a court must determine whether plaintiffs make "'a modest factual showing' that the employees identified in their complaint are 'similarly situated.'" *Id.* (quoting *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 536 & n.4 (3d Cir. 2012)). If plaintiffs satisfy this burden, "the court will 'conditionally certify' the collective action for the purpose of facilitating notice to potential opt-in plaintiffs and conducting pre-trial discovery." *Maddy v. Gen. Elec. Co.*, 59 F. Supp. 3d 675, 681 (D.N.J. 2014) (quoting *Zavala*, 691 F.3d at 536). A court usually considers conditional certification after the parties have engaged in limited discovery. *See, e.g., Goodman v. Burlington Coat Factory*, No. 11-4395, 2012 WL 5944000, at *1-2 (D.N.J. Nov. 20, 2012).

The term conditional certification is actually a misnomer. Conditional certification of an FLSA matter does not produce a class with independent legal status and is not necessary "for the existence of a representative action under the FLSA." *Symczyk I*, 656 F.3d at 194. Rather, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." *Symczyk II*, 133 S. Ct. at 1530 (internal quotations omitted).

There is no express provision in the FLSA pertaining to court-facilitated notice to potential opt-in plaintiffs. In *Hoffman-La Roche Inc. v. Sperling*, the Supreme Court concluded that district courts have discretion, in appropriate Section 216(b) cases, to authorize and facilitate notice to

---

[9] In response to "excessive litigation spawned by plaintiffs lacking a personal interest in the outcome," the FLSA was amended in 1947 to, among other things, add the opt-in requirement. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989).

potential class members. 493 U.S. 165, 171 (1989).[10] The Court stated that collective actions allow plaintiffs to pool their resources and provide an efficient vehicle to resolve "common issues of law and fact arising from the same alleged [wrongful] activity" in one proceeding. *Id.* at 170. "These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action." *Id.* As a result, the Supreme Court concluded that trial courts are responsible for ensuring that the joinder of additional plaintiffs is accomplished in an efficient manner. *Id.* at 170-71. Early involvement in the notice process frequently permits district courts to "manage collective actions in an orderly fashion" and ensures that notice is "timely, accurate, and informative." *Id.* at 172-73. In facilitating notice, however, "courts must be scrupulous to respect judicial neutrality" as it pertains to the merits of the action. *Id.* at 174.

For the second step, which usually occurs after the close of full discovery, courts apply a "stricter standard" to determine whether the plaintiffs are, in fact, similarly situated. *Zavala*, 691 F.3d at 535-36. To make this determination, courts "consider[] all the relevant factors and make[] a determination on a case-by-case basis." *Id.* at 536. While case specific, the relevant factors may include whether employees have the same job description, are subject to the same compensation plan, received the same training, or whether they advance similar claims and seek substantially the same form of relief. *Id.* at 536-37. Plaintiffs must establish by a preponderance of the evidence that they are similarly situated. *Id.* at 537. In addition, just because a class was conditionally certified at the first step does not mean that the class will also be certified at the second step. *See, e.g., Adami v. Cardo Windows, Inc.*, No. 12-2804, 2016 WL 1241798, at *5-11 (D.N.J. Mar. 30, 2016) (decertifying class at second step because plaintiff failed to establish that he was similarly

---

[10] *Hoffman-La Roche* involved an age discrimination class under the ADEA, "which incorporates enforcement provisions of the FLSA." 493 U.S. at 167 (internal citation omitted).

situated to other employees). If plaintiffs satisfy their burden at the second step, "the case may proceed to trial as a collective action." *Symczyk I*, 656 F.3d at 193.

## III.   ANALYSIS

Under the first step as set forth by the Third Circuit, Plaintiff here seeks to conditionally certify a class of all non-managerial employees employed by "Defendants" with an opt-in period of three years from the date of the Complaint. During the first step, courts apply "a fairly lenient standard" to determine whether the employees are "similarly situated." *Maddy*, 59 F. Supp. 3d at 681. It is sufficient if a plaintiff establishes that he "bring[s] the same claims and seek the same form of relief." *Id.* A plaintiff is not required to show that his position is identical to the position of other potential class members. Rather, as noted, a plaintiff must "produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected [him] and the manner in which it affected other employees." *Id.* (internal bracket omitted) (quoting *Symczyk I*, 656 F.3d at 193). In deciding whether to conditionally certify a class, courts should consider "all relevant factors and make a factual determination on a case-by-case basis." *Id.* Courts, however, should not assess the merits of either a plaintiff's claims or a defendant's defenses during the conditional certification stage. *See Goodman v. Burlington Coat Factory*, No. 11-4395, 2012 WL 5944000, at *5-6 (D.N.J. Nov. 12, 2012).

The Court concludes that Plaintiff has not made a sufficient showing to warrant conditional certification. While Ding's affidavit shows that other deliverymen may be similarly situated to him, it does not show that Ding's experience is typical of the broader proposed class. Ding's affidavit does discuss two deliverymen who allegedly worked more than 40 hours per week and did not receive overtime payment. Although the affidavit is from Ding alone, he at least explains

9

that he knows how many hours the others worked since he worked alongside them. He also explains that knows how much they were paid due to conversations he had with them.

But Ding does not adequately explain how he knows that other members of the class were underpaid. He does provide evidence that employees holding a variety of job titles –chef, waiter, receptionist—worked more than 40 hours per week. He does not provide sufficient information, however, that these individuals were paid less than they were legally owed. Plaintiff's conclusory statement that he "sincerely believe[s]" that all the employees he mentioned were not paid minimum or overtime wages is not evidence. Nor is his conclusory claim that he "know[s] it is Defendants [sic] common policy to not pay its employees with overtime pay[.]" Ding Aff. ¶ 84. He does not say *how* he knows that it was Defendant's common policy or provide any other supporting evidence. Indeed, he does not mention the salaries of other employees at all. To claim that he is similarly situated to all non-managerial employees, Plaintiff would have to adequately show that their rights under FLSA were also violated. He only makes that showing for a narrow subclass—deliverymen.

Plaintiff's attached "related case complaint" likewise fails to demonstrate that other employees were similarly situated to him. This complaint was filed in 2015. Its allegations concern a chef and a waiter who worked more than 40 hours per week and were not paid overtime wages. D.E. 24-2, ¶¶ 65-80. However, the allegations address a period before Ding began working for Defendants in October of 2015 and refer to actions that occurred more than three years before the filing of Ding's complaint. *Id.*, ¶¶ 68, 75. Such employees would therefore not even be included in Ding's proposed class. As a result, these allegations do not sufficiently support an

inference that those in Ding's proposed class were similarly situated to these individuals or that other employees in the appropriate period were similarly situated to Ding.[11]

In further support of the motion, Plaintiff cites to *Yang v. Vill. Super Mkt., Inc.* to claim that his relatively sparse set of evidence meets the standard for conditional certification. Civ. No. 18-cv-10486, 2019 WL 1275059 (D.N.J. Mar. 20, 2019). In *Yang*, the court granted certification on the basis of an affidavit similar to Ding's. *Id.* at *4-6. That case, however, is different from the instant case in two ways. First, in *Yang*, Judge Walls analyzed the merits in the specific context of claims by supermarket employees. *Id.* at *6-7. Second, in *Yang*, the plaintiff had provided *two* affidavits, the first of which was from the plaintiff and the second of which echoed plaintiff's claim. *Id.* at *5.

Plaintiff also relies on *Purnamasidi v. Ichiban Japanese Rest.*, Civ. No. 10-cv-1549, 2010 WL 3825707 (D.N.J. Sept. 24, 2010). In that case, the plaintiff provided an affidavit from another employee which noted that the employee "regularly [saw] other employees, such as waiters, waitresses, and bussers working the same hours and receiving the same type of pay as [he did.]" *Id.* at *10. The proposed class in that case was narrower, consisting only of "tipped food service workers." *Id.* at * 2. While the court granted certification, Judge Cavanaugh noted that the plaintiff had only "presented the barest minimum" required to succeed. *Id.* at *9. The "barest minimum"—

---

[11] Additionally, the plaintiffs in the related case did not work at Ding's place of work. (D.E., ¶¶ 65, 75). Although those plaintiffs claim that Defendant Restaurant Group treated employees of their various restaurants interchangeably (*Id.*, ¶ 58), Plaintiff Ding only makes allegations as to one restaurant. The related case complaint also makes no allegations as to Defendant Next Door. Finally, even with the benefit of affidavits in addition to the complaint, the motion for conditional certification in that case was *denied* by Judge Salas. *Siu Ching Ha v. 4175 LLC*, No. 15-5530, 2018 WL 1509090 (D.N.J. Mar. 27, 2018).

an affidavit stating that someone "regularly [saw]" other employees in the proposed class be underpaid—is still more than what Ding has offered here.

Plaintiff also notes that Defendants violated New Jersey labor laws, including the requirement to provide wage statements. Plf. Br. at 8. While acknowledging that these are not FLSA violations, Plaintiff claims that Defendants' "common treatment" of employees by violating these laws "further demonstrates" a factual nexus between the Plaintiff's experience and that of other employees. *Id.* Even assuming that this is a fair inference, Ding only says that *he* did not receive wage statements. Ding Aff. ¶¶ 31-32. He presents no evidence that other employees had a similar experience.

Ultimately, the issue here is not that Ding's allegations are not credible[12] or, as Defendants suggest, because they are inadmissible hearsay. Instead, the issue is that Ding has not provided sufficient evidence of the pay rates of any employees other than deliverymen. This is a fatal error when seeking to conditionally certify a class much broader than just deliverymen.

Plaintiff does correctly state that conditional certification can be granted despite members of the proposed class possessing different job titles and responsibilities. Plf. Br. at 6-7. But Ding has not shown a factual nexus between his experiences and those of members of his proposed class. Plaintiff has not adequately shown that non-managerial employees, other than two other deliverymen, were compensated similarly to him. Nor, other than a general "belief," has he shown any evidence that they were denied overtime pay. Ding's offered evidence therefore does not show that members of the proposed class are similarly situated to him.

---

[12] Defendant Restaurant Group's declarations from employees disputing Ding's allegations are not relevant—at this stage, this Court is not making decisions on the merits. *See Goodman*, 2012 WL 5944000, at *5-6 (declining to consider "happy camper" declarations from the defendant since that "inquiry necessarily addresses the merits of Plaintiffs' claim and is therefore premature.").

Accordingly, this Court dismisses the motion for notice without prejudice.

## IV.    CLASS NOTICE

Since conditional certification will not be granted at this juncture, the Court does not reach Plaintiff's other issues, such as the extent and manner of notice, the opt-in period, or whether the period of limitations ought to be tolled.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs' motion is denied without prejudice. An appropriate form of Order accompanies this Opinion.

Dated: January 30, 2020

John Michael Vazquez, U.S.D.J.